**BERNELL HERBERT, Appellant**
v.
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

Crim. App. No. 2002-135, Sup. Ct. No. F218-01

District Court of the Virgin Islands

Division of St. Thomas and St. John

July 14, 2005

DEBRA S. WATLINGTON, TPD, St. Thomas, U.S.V.I., *Attorney for Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *Attorney for Appellee.*

FINCH, *Chief Judge of the District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and CABRET, *Chief Judge of the Superior Court, sitting by designation.*

## MEMORANDUM OPINION

(July 14, 2005)

Following a bench trial, appellant Bernell Herbert was found guilty of third-degree burglary in violation of title 14, section 444(1) of the Virgin Islands Code. On appeal, Herbert asserts that there was insufficient evidence for the court to find him guilty, and also that the Virgin Islands Habitual Criminals Statute, under which he was sentenced, is unconstitutionally vague. V.I. CODE ANN. tit. 14, § 61. For the reasons set forth herein, we find there was sufficient evidence for the trial judge to convict Herbert and also find that the habitual offender statute is not unconstitutionally vague.

## I. FACTS AND PROCEDURAL HISTORY

On July 23, 2001, the police received a 911 call alerting them to a burglary in progress at a home in Anna's Retreat on St. Thomas. (J.A. at 38.) Two persons made the call; a woman spoke first, and then a man

spoke. (J.A. at 106.) The callers described the individual they saw breaking into the home as a young male with dreadlocks and no hat. (J.A. at 107.) They also said the individual was wearing "like a white t-shirt."

Officers Kenneth Querrard and Shelly Ann Stanley responded to the call, and when they arrived at the neighborhood, someone showed them the house, which is built into the side of a hill with seventy steps leading down to it from the road. (J.A. at 60, 68.) The officers remained at the top of the stairs and looked down. From that vantage point they saw a young male, later identified as Herbert, ascending the steps. (J.A. at 39.) He was wearing a yellow t-shirt and no hat. (J.A. at 16.) When Herbert reached the halfway point, the officers told him to freeze. Herbert then turned and walked back toward the house, saying it was his mother's. (J.A. at 40, 73.) Officer Querrard had previously had contact with Herbert on two prior occasions, and knew the house Herbert was approaching did not belong to Herbert's mother. (J.A. at 74, 85.) The officers then arrested Herbert.

At the house, the officers discovered that the louvers had been broken off a bedroom window and the screen pushed in. (J.A. at 53-34.) The police contacted the owner of the home, Mr. Osborne, who inspected it upon his arrival. The owner indicated to the police that his bedroom had been ransacked, but that nothing had been taken. (J.A. at 55-56.) At the police station, the owner of the home spoke to Herbert. Herbert told Osborne he knew him, and then said three things to Osborne: 1. "if you work with me, I'll work with you," 2. that Herbert's mother would take care of the damages, and 3. that he had not taken anything. (J.A. at 43-44, 58-59, 81.) Osborne then asked Herbert who was with him when he broke into the house, and Herbert responded "Don't worry about that, I'll take the rap." (J.A. at 58, 64, 81.)

On August 1, 2002, Herbert was charged with third-degree burglary and also with interfering with a police officer, in violation of 14 V.I.C. § 1508, as well as trespass, in violation of 14 V.I.C. § 1741. On October 22, 2001, the Government filed a habitual criminal information against Herbert based on a prior felony conviction. On November 12, 2001, the Government filed an amended habitual criminal information based on a prior felony conviction in another case. The matter was tried before a jury on December 3, 2001. The following day, Herbert was convicted on the charges of interfering with a police officer and trespass. The jury was not able to reach a verdict on the third-degree burglary charge, and a

mistrial was declared regarding that charge. (J.A. at 29.) The government noticed its readiness for trial on the remaining third-degree burglary count on March 5, 2002. On April 8, 2002, a second amended habitual offender information was filed.

On May 13, 2002, Herbert waived his right to a jury trial, and on May 22, 2002, a bench trial was conducted on the burglary count. Herbert was found guilty. The trial court sentenced Herbert on July 10, 2002. Over objections by defense counsel that the Habitual Criminals Statute was void for vagueness, the Court found it had no discretion to depart from the statute and as a result, sentenced Herbert to a period of ten years in prison. (J.A. at 12.) Judgement was entered on August 5, 2002. This appeal was filed on July 22, 2002.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review the judgments and orders of the Superior Court in all criminal cases in which the defendant has been convicted, other than on a plea of guilty. *See* 4 V.I.C., § 33; Section 23A of the Revised Organic Act.[1]

When an appellant raises a sufficiency of the evidence argument to challenge a conviction, the court "must view the evidence in the light most favorable to the government and must sustain the jury's verdict if a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offense." *United States v. Syme*, 276 F.3d 131, 156 (3d Cir. 2002) (citation omitted).[2]

The question of whether a statute is constitutional is subject to plenary review. *United States v. Sczubelek*, 402 F.3d 175, 177 (3d Cir. 2005).

## III. SUFFICIENCY OF THE EVIDENCE

Herbert contends there was insufficient evidence for the trial court to find him guilty of third-degree burglary for two interrelated reasons. First, he argues that the government failed to prove he was the person

---

[1]    Revised Organic Act of 1954, § 23A, 48 U.S.C. § 1613a, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2004) (preceding V.I. CODE ANN. tit. 1).

[2]    The same standard applies when the review is of a conviction after a bench trial. *See Robinson v. Government of the Virgin Islands*, 2002 U.S. Dist. LEXIS 24278 (D.V.I. Dec. 19, 2002).

who committed the crime. Second, he maintains there was no direct evidence on which to convict him, and that the trial judge improperly relied on "speculation and inferences" to arrive at the conviction. (Appellant's Brief at 8.)

A defendant who challenges the sufficiency of the evidence bears a heavy burden. *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996). "[O]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *Syme*, 276 F.3d at 156. Furthermore, a trier of fact may base a conviction on circumstantial evidence, which is no less probative on the issue of guilt than is direct evidence. *Government of the Virgin Islands v. Williams*, 739 F.2d 936, 940 (3d Cir. 1984).

The Virgin Islands statute governing third-degree burglary provides in pertinent part:

> Whoever—
>
> (1) with intent to commit an offense therein, breaks and enters a dwelling house, building, or structure or any part thereof ... is guilty of burglary in the third degree.

14 V.I.C. § 444(1). Herbert contends that in order to carry its burden at trial, the government was required to prove three elements: 1. that he had the requisite intent to commit an offense when he broke into the house, 2. that he did break and enter into the house, and 3. that he did commit an offense therein.[3] (Appellant's Brief at 10.) As the government notes, this is an incorrect statement of the law. According to the language of the statute, as well as case law interpreting it, the government need only prove two elements—that Herbert broke into and entered the "dwelling house," and that he had the intent to commit an offense while he was doing so.[4] 14 V.I.C. § 444(1); *Locadio Camacho, Inc. v. Alliance Ins. Co.*, 13 V.I. 219, 223 (Terr. Ct. 1977). The United States Court of

---

[3]    Herbert does not provide any legal support for his argument that the government must prove the offense was actually committed.

[4]    Furthermore, if it were true that the government had to prove an offense was committed to successfully prosecute under 14 V.I.C. § 444(1), then the companion statute, which governs punishment for any crime committed by a burglar in the course of any degree of burglary, would be meaningless. 14 V.I.C. § 446; *Government of the Virgin Islands v. Quinonez*, 18 V.I. 332 (D.V.I. 1981).

Appeals for the Third Circuit has noted that the government must identify the intended crime with specificity. *Government of the Virgin Islands v. Pemberton*, 813 F.2d 626, 631-32 (3d Cir. 1987). In this case the government did so, charging in the information that Herbert intended to commit larceny, defined as "the unlawful taking, stealing, carrying, leading, or driving away the personal property of another." 14 V.I.C. § 1801; (J.A. at 14.) The government was therefore required to prove at trial that Herbert broke into and entered the dwelling with the intent to unlawfully take property from it.

Herbert argues that the government failed to prove the necessary elements beyond a reasonable doubt because neither of the persons who made the 911 call testified at trial, the description the callers originally made to police described the suspect as wearing "like a white t-shirt," whereas Herbert's t-shirt was actually yellow, and that Herbert's statement "work with me, and I'll work with you; my mother will take care of things" was not an admission of guilt. Herbert maintains that these issues, taken together, resulted in a conviction "based purely on speculation." (Appellant's Brief at 11.) The government counters that the difference between a white t-shirt and a yellow one is immaterial, and that Herbert's comments to Mr. Osborne, taken in their entirety, easily give rise to the inference that Herbert had committed a burglary at Osborne's home. (J.A. at 160.)

Herbert's arguments are not persuasive. The evidence presented at trial, despite being circumstantial in nature, belies the assertion that Herbert was not shown to be the perpetrator of the burglary. Officer Querrard, who had previously encountered Herbert, identified him. The description of the suspected burglar and his clothing matched those of Herbert. The difference between a white t-shirt and a yellow t-shirt is negligible. Herbert's statements about getting his mother to "take care of things" and his willingness to "take the rap" may not be direct admissions of guilt, but they are consistent with someone who had been involved in wrongdoing. The circumstantial evidence against Herbert was thus significant. Taking the evidence presented in the light most favorable to the government, it was reasonable for the trial judge to find Herbert guilty. We therefore find that the trial court's conviction on the third-degree burglary charge was supported by sufficient evidence.

## IV. CONSTITUTIONALITY OF THE HABITUAL CRIMINALS STATUTE

The Virgin Islands Habitual Criminals Statute governs sentencing of persons convicted of crimes who have previously been convicted of other crimes. In this case, the amended habitual criminal information filed by the government invoked the sentencing parameters set forth in 14 V.I.C. § 61(b), which provides:

> Whoever ... has been convicted of an offense which would be a felony in the Virgin Islands and a crime of violence as defined in Title 23, section 451(e) of the Code shall upon a subsequent conviction of a felony in the Virgin Islands, which is also a crime of violence as defined in the aforementioned provision, be incarcerated for a term of imprisonment of not less than ten years as provided in subsection (a) of this section, or not less than one-half the maximum sentence provided by law, whichever is greater, and may be incarcerated for the remainder of his natural life if the subsequent felony for which the person is convicted in the Virgin Islands, which is also a crime of violence as defined in Title 23, section 451(e) of the Virgin Islands Code, was committed within ten (10) years after the date the person has completed serving his sentence on the conviction for the prior felony and crime of violence.[5]

Title 23, section 451(e) of the Virgin Islands Code states:

> "Crimes of violence" means the crime of or the attempt to commit, murder in any degree, voluntary manslaughter, rape, arson,

---

[5] There is confusion in the record regarding precisely which subsection of 14 V.I.C. § 61 was used to impose the sentence on Herbert after his conviction. The Amended Habitual Criminal Information, filed on April 5, 2002, states that "the Government will seek to invoke the provisions of 14 V.I.C. § 61(b) at the time of sentencing. ..." (J.A. at 30.) The Judgment and Commitment, dated August 5, 2002, states that "for his conviction on Count I and having previously been convicted of a felony offense, the Plaintiff having filed a habitual offender's complaint, Defendant is sentenced pursuant to 14 V.I.C. § 61(a) to incarceration for ten years. ..." (J.A. at 13.) 14 V.I.C. § 61(a) is worded similarly to 14 V.I.C. § 61(b) with the exception that the former does not contemplate that the earlier conviction must necessarily be considered a crime of violence pursuant to 23 V.I.C. § 451(e). In the briefs, Herbert addresses his arguments to 14 V.I.C. § 61(b), while the government addresses its arguments to 14 V.I.C. § 61(a). (Appellant's Brief at 13; Appellee's Brief at 11.) The focal point of Herbert's challenge to the statute, however, is the language contained in 23 V.I.C. 451(e), defining crimes of violence.

mayhem, kidnaping, assault in the first degree, assault in the second degree, assault in the third degree, robbery, burglary, unlawful entry or larceny.

■ Herbert raises a due process challenge, pursuant to the Fourteenth Amendment to the United States Constitution, to 14 V.I.C. § 61 and 23 V.I.C. § 451(e), arguing that the statute is unconstitutionally vague. His argument contains two parts. First, he asserts that 23 V.I.C. § 451(e) is vague because it does not specify degrees of burglary, whereas degrees of both murder and assault are specifically delineated. Second, he argues that burglary cannot properly be included in the list of crimes of violence because it does not involve violence.

The government counters that the legislature's failure to list each degree of burglary in 23 V.I.C. § 451(e) merely indicates it was unnecessary to do so, because with no language to indicate the contrary, the term "burglary" encompasses all degrees of the offense. The government further responds that it is the legislature's prerogative to include burglary in the list of crimes of violence if it so wishes, noting that the lesser offense of unlawful entry is also included in the list of crimes of violence.

What neither party raises in its brief is the fact that both of these issues were addressed in this jurisdiction nearly twenty years ago. In *Government of the Virgin Islands v. Harrigan,* the Third Circuit Court of Appeals reviewed a criminal defendant's challenge to the Habitual Criminals Statute. 791 F.2d 34 (3d Cir. 1986). Although Harrigan's conviction was for grand larceny rather than burglary, his challenge was made on the same grounds as Herbert's. He argued in general that the statute was vague, and argued particularly that larceny should not be included in 23 V.I.C. § 451(e), and thereby in 14 V.I.C. § 61, because it is not a crime of violence. *Id.* at 35, 37. Harrigan's arguments thus mirror those of Herbert in this case.

In *Harrigan,* the Third Circuit Court of Appeals rejected Harrigan's void for vagueness argument and held that "contrary to Harrigan's unsupported assertion, we find that the statute is not vague." 791 F.2d at 37.

The *Harrigan* court also settled the second issue raised by Herbert in his attack on the statute. In addressing Harrigan's argument that larceny

was inappropriately included in the list of crimes of violence in 23 V.I.C. § 451(e), the court held:

> Harrigan contends that larceny is not a crime of violence and that, therefore, it was unconstitutional to include it in § 451(e) or, by reference, in the habitual criminal statute. While larceny does not necessarily involve violence, we disagree with Harrigan's contention that there is no rational nexus between the legislative intent to prevent crime and the inclusion of larceny in the list of crimes considered violent. It is a matter for the legislature and not for this court to determine what is a crime of violence and which crimes warrant application of the habitual criminal statute.

791 F.2d at 37.[6] In a more recent, unpublished opinion, the Third Circuit Court of Appeals reiterated this position:

> The recidivist statute employs the term "crime of violence" as a placeholder for several different crimes and imposes special punishment when a repeat offender's subsequent crime is so defined. We recognize that certain "crimes of violence," including larceny and unlawful entry, do not ordinarily involve actual violence. But awkward nomenclature aside, the Virgin Islands legislature clearly intended the recidivist statute's bar against release to apply whenever a repeat offender's subsequent offense is on the list in 23 V.I. CODE ANN. § 451(e).

*Government of the Virgin Islands v. Edwards*, 59 Fed. Appx. 470, 473 (2003).

The controlling and persuasive case law addressing the constitutionality of the Habitual Criminals Statute is not in any way diminished by the fact that it addresses larceny rather than burglary, as is at issue in this case. Herbert cannot successfully attack the statute's constitutionality simply by disagreeing with the legislature's decision on

---

[6] Title 23, Title 23, section 451(e) of the V.I. Code contained different language at the time *Harrigan* was decided. However, it is substantially similar to the extant version of the statute. It read: "Crime of violence" means any of the following crimes, or an attempt to commit any of the same, namely: Murder in any degree, voluntary manslaughter, rape, arson, mayhem, kidnaping, assault in the first degree, assault with or by means of a deadly or dangerous weapon, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering and larceny."

what constitutes a crime of violence for purposes of curbing habitual criminal offense.

Accordingly, we find the Habitual Criminals Statute is not unconstitutional.

## V. CONCLUSION

For the foregoing reasons we hold that Herbert's conviction for third-degree burglary was based on sufficient evidence and that his argument that the Virgin Islands Habitual Criminals Statute is unconstitutional is without merit. We therefore affirm Herbert's conviction and the sentence imposed on him pursuant to 14 V.I.C. § 61 and 23 V.I.C. § 451(e).